**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND**

| | |
|---|---|
| WAYNE C. MURPHY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 0:20-cv-058-JMH-MAS |
| ) | |
| JESSIE FERGUSON, Warden, ) | |
| ) | |
| Respondent. ) | |

**OPINION & ORDER**

Petitioner Wayne C. Murphy ("Murphy"), through counsel of record, has petitioned for a writ of habeas corpus pursuant to 21 U.S.C. § 2254. [DE 1]. He seeks federal relief from his 2006 Kentucky convictions and consecutive sentences for first degree assault, first degree robbery, and first-degree rape (the latter entailing life imprisonment). The Court previously preliminarily screened Murphy's petition per Rule 4 of the Rules Governing Section 2254 Cases, found it facially timely and in the correct form, and directed briefing on the claims asserted. [DE 24].

In conjunction with his reply, Murphy requests leave to serve subpoenas for four categories of discovery to support his claims: (1) video surveillance footage from the King's Daughters Medical Center ("KDMC") (and potentially in the Greenup Circuit Court's possession) from the morning of the crime (July 14, 2004); (2) grand jury transcripts from the proceedings underlying Murphy's indictment on the relevant offenses; (3) AT&T phone records from Murphy's mother's mobile home from July 14, 2004; and (4) broadly, all police records related to Murphy's case. [DE 46]. For the reasons here discussed, the Court permits some, but not all, of the sought discovery.

1

## I. RELEVANT BACKGROUND

The Court summarizes the basic facts of and key procedural steps in Murphy's case, as reflected in his petition, to the extent relevant to the instant discovery motion. In the early afternoon of July 14, 2004, a Russell, Kentucky Superstar Video Employee was attacked and seriously injured. [DE 1 ¶ 5]. The victim survived the attack. Based on the store's transaction records and a third-party witness's positive identification, William Dixon ("Dixon") was arrested and questioned in relation to the offense. [*Id.* ¶¶ 8–10]. Dixon admitted involvement but implicated Murphy as the primary assailant. [*Id.*]. Murphy was subsequently apprehended, and local media coverage reported Dixon's and Murphy's arrests for the crimes. [*Id.* ¶ 12]. Murphy was thereafter charged with the assault, robbery, and rape of the victim. [*Id.* ¶ 32].

Hon. Robin Webb ("Webb") represented Murphy at the trial level as counsel, initially retained and then pro bono. [*Id.* ¶ 33].[1] At trial, the Commonwealth relied primarily on identification testimony from the victim and third-party witness John Barger ("Barger"), as well as testimony from an individual incarcerated with Murphy after his July 2004 arrest, Donald Howard ("Howard"), who purportedly witnessed Murphy's confession to the charged crimes. [*Id.* ¶ 39]. Webb's central strategy, on the other hand, was to present alibi evidence, most notably through witness James Hurst ("Hurst"), who testified that he was with Murphy and Murphy's fiancée (Hurst's niece), Tracy Chaffins ("Chaffins"), at the time of offense commission. [*Id.* ¶¶ 47–50]. Hurst testified that, during the relevant period on July 14, 2004, he picked Murphy and Chaffins up at the KDMC after Chaffins's

---

[1] A different attorney, Hon. Samuel Weaver, represented Murphy on appointment in the first few months following Murphy's arrest. [*Id.*].

2

prenatal appointment and drove them on various errands—to a Speedway gas station, to the Ironton Municipal Court to pay a fine, to the Save a Lot grocery store, to the Rich Oil gas station, and finally back to Murphy's mother's mobile home. [*Id.*].

The prosecution endeavored to discredit Hurst's testimony through cross-examination and other evidence. [*Id.*]. Time-stamped surveillance video evidence was crucial to both sides' cases. Partial KDMC footage showed Chaffins (though not Murphy) at approximately 10:55 a.m. on July 14. [*Id.* ¶ 19].[2] The parties further disagreed about the import of Speedway footage that captured Murphy on that date; though it reflected a timestamp of 11:17 a.m., contemporaneous transaction logs from a cash register had a conflicting timestamp of 11:50 a.m. [DE 1 ¶ 50]. Using the latter timestamp as a reference point, among other evidence, the Commonwealth sought to dismantle Murphy's asserted alibi timeline.[3]  Also critical to the prosecution's case was the victim's largely unimpeached testimony concerning Murphy's presence and strange behavior in the video store just before the attack. [*Id.* ¶ 46 (recounting the victim's testimony that Murphy lurked around the store, entering restricted areas and staring at the ceiling, prior to the attack)].

After an approximately eight-day trial, the jury convicted Murphy on all counts. [*Id.* ¶¶ 53–54]. Murphy was ultimately sentenced to twenty years' imprisonment on the assault and robbery counts and to life imprisonment for the rape offense, with final

---

[2] Though the Greenup Circuit Court ordered the KDMC to preserve and produce all surveillance footage from the July 14, 2004 morning [DE 46, at Page ID # 2282], Murphy claims that neither he nor his counsel ever received the full video. Murphy represents that he previously obtained the partial footage, which shows Chaffins at 10:55 a.m., from Chaffins's attorney.

[3] Murphy maintains that Kentucky Lottery records obtained after Murphy's trial (and ultimately presented during initial-review post-conviction proceedings) confirm the accuracy of the 11:17 a.m. timestamp. [*Id.* ¶¶ 23, 69].

judgment entered in February 2007. [*Id.*]. Assisted by appointed counsel, Murphy directly appealed to the Kentucky Supreme Court, arguing that the trial court had erred by allowing testimony concerning blood spatter and microscopic hair follicle analysis and by denying a directed verdict premised on the absence of reliable scientific evidence. [*Id.* ¶¶ 56–58]. The Kentucky Supreme Court rejected these claims, finding that Murphy's challenges went only toward the weight of the scientific proof, and not toward its admissibility. [*Id.*].[4]

His first post-conviction step, Murphy next filed a timely *pro se* motion for relief from judgment pursuant to Kentucky Criminal Rule 11.42 (hereinafter "RCr 11.42"). [*Id.* ¶ 61]. Murphy argued that trial counsel was ineffective for failing to investigate and develop his alibi defense. [*Id.* ¶ 62]. With the assistance of appointed counsel, Hon. Michael Goodwin ("Goodwin"), Murphy expanded on these arguments via supplemental brief. [*Id.* ¶ 63]. While the now-counseled RCr 11.42 motion was pending, Goodwin further filed a parallel motion for relief of judgment under Kentucky Civil Rule 60.02 (hereinafter "Rule 60.02"), arguing that the victim had recanted. [*Id.* ¶ 72]. The Greenup Circuit Court denied both motions after evidentiary hearings. [*Id.* ¶¶ 70–72]. Murphy (with the assistance of two new, appointed attorneys) appealed the denial of his RCr 11.42 motion to no avail. [*Id.* ¶¶ 73–77]. Finally, in March 2020, the Kentucky Supreme Court denied Murphy's request for discretionary review of the RCr 11.42 denial, ending Murphy's bid for state court relief from his convictions. [*Id.* ¶ 78].

---

[4] The Kentucky Supreme Court did grant limited relief on Murphy's claim that his sentences should have run concurrently, rather than consecutively; on remand, the Greenup Circuit Court amended its judgment to order service of the assault and robbery sentences concurrent with the life sentence for rape. [*Id.* ¶ 60].

4

Murphy subsequently filed the instant federal habeas petition, asserting three substantive grounds for relief. [DE 1]. All three claims are ineffective assistance of counsel variants; Murphy argues that Webb, his former trial counsel, provided constitutionally deficient assistance by failing to: (1) investigate his alibi timeline and present exculpatory evidence; (2) impeach the victim's testimony with available evidence and cast doubt on the victim's identification of Murphy; and (3) successfully litigate a Fourth Amendment claim based on a perceived lack of probable cause to issue the warrant for Murphy's arrest.[5] As discussed, Murphy fully exhausted the first claim, presenting all relevant facts and argument to the Kentucky courts. Murphy concedes, however, that he has not previously raised the second or third claims, and they are now procedurally defaulted. Accordingly, to excuse the procedural default of Claims 2 and 3 and circumvent the resulting bar to their federal review, Murphy argues that initial-review post-conviction counsel (Goodwin) was ineffective because he did not raise trial counsel's (Webb's) failure to impeach the victim or her failure to challenge the arrest warrant on Fourth Amendment grounds in Murphy's initial state collateral proceedings.[6]

Murphy here seeks leave to conduct discovery on four identified topics in search of evidence to support his ineffective assistance claims. [DE 46]. The Commonwealth opposed the discovery requests [DE 47], and Murphy replied [DE 48].

---

[5] Murphy argues that all evidence stemming from the arrest, including Howard's testimony about Murphy's subsequent jailhouse confession and the victim's viewing of a photo array that included Murphy's booking photo, should have been suppressed as fruits of the poisonous tree. Murphy further argues that, as a result of the victim's viewing of the purportedly tainted photo array and other circumstances, the victim's in-court identification of Murphy too was inadmissible.

[6] Though Murphy's entire petition features an implicit thread of argued "actual innocence," he does not assert either a freestanding actual innocence claim or a gateway actual innocence claim employed as a mechanism to excuse his procedural default.

5

## II.     LEGAL FRAMEWORK

### A.     SECTION 2254 STANDARD

District courts "shall entertain" habeas corpus petitions from individuals that are "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The since-enacted Antiterrorism and Effective Death Penalty Act ("AEDPA") intentionally sets an exceptionally high standard for habeas relief. The statute and interpretive authority manifest "Congress's desire to channel prisoners' claims first to the state courts" and to leave with them "primary" responsibility for processing state post-conviction claims. *Jones v. Bagley*, 696 F.3d 475, 482–83 (6th Cir. 2012) (internal quotation marks and citations omitted); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting the habeas scheme's "highly deferential standard for evaluating state-court rulings").

Accordingly, federal courts may not grant a § 2254 petition "with respect to any claim that was adjudicated on the merits in State court proceedings unless the" state court's adjudication of that claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the *Jones* Court explained, the "contrary to" clause thus permits relief "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts[.]" 696 F.3d at 483 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring)). Relatedly,

6

the "unreasonable application" clause merits relief only where the application of federal law is not merely incorrect but is "objectively unreasonable in light of the evidence presented to the state court[.]" *Id.* (internal quotation marks omitted). Lastly, as it pertains to the § 2254(d)(2) showing, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

**B.**     **PROCEDURAL DEFAULT**

Where a habeas petitioner presents claims that were *not* adjudicated on their merits in the state courts, however, he faces even more formidable a barrier to federal review and relief. Section 2254 requires petitioners to exhaust all claims by presenting them to the state courts first for decision. 28 U.S.C. § 2254(b). Where the petitioner has remaining opportunity to present the issues to the state courts via available procedural mechanisms, he has not fully exhausted those claims. *Id.* § 2254(c). And, where the petitioner failed to take advantage of such opportunities to exhaust the claims before those opportunities lapsed, any unexhausted claims are deemed procedurally defaulted.

Though federal courts ordinarily may not review procedurally defaulted claims, they must do so where the petitioner establishes cause for and prejudice resulting from the default. *Jones*, 696 F.3d at 484.[7] Important for Murphy's case, in 2012, the Supreme Court modified its "previously unqualified holding" that the errors of post-conviction counsel

---

[7] As noted, Murphy does not advocate any gateway miscarriage of justice / actual innocence theory to excuse procedural default in this case, and the Court thus does not address that showing. *See generally id.*(citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986) (recognizing a gateway claim, intended to excuse procedural default, that federal review is necessary to "prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent")).

could not supply the requisite "cause" to excuse a procedural default. *Mitchell v. Genovese*, 974 F.3d 638, 642 (6th Cir. 2020) (discussing *Martinez v. Ryan*, 566 U.S. 1, 14 (2012)). Accordingly, under *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial[,]" at least where such initial-review collateral proceedings either officially or functionally provided the first opportunity to meaningfully present the trial-level ineffective assistance claim. 566 U.S. at 9; *see also Trevino v. Thaler*, 569 U.S. 413, 429 (2013). Where the petitioner establishes cause and prejudice for the default, he earns *de novo* review; however, the burden still rests on the petitioner to prove any factual contentions by clear and convincing evidence. *Jones*, 696 F.3d at 484; 28 U.S.C. § 2254(e)(1).

C. **INEFFECTIVE ASSISTANCE OF COUNSEL ("IAC")**

As a general matter, the standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), guides analysis of IAC claims (whether freestanding or gateway, and the instant case comprises both). To prevail, the petitioner must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the petitioner. *Id*. at 687. To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.[8]

---

[8] The Supreme Court has thus characterized federal habeas review of an exhausted IAC claim as "doubly deferential," given the requirement that the federal court indulge both a presumption that counsel was competent and a presumption that the state court

8

A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id.* at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695. The petitioner ultimately must satisfy both prongs of the Strickland analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

### D. HABEAS DISCOVERY STANDARD

Discovery is not automatically permitted in habeas cases. Rule 6 of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery" as appropriate. Rule 6(a). Any party seeking discovery must further "provide reasons for the request" and specify any proposed discovery tools he requests leave to use. Rule 6(b). Though the Rules themselves do not define the 6(a) "good cause" requirement, the Supreme Court had stated before Rule 6's advent that,

> where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris v. Nelson*, 394 U.S. 286, 300 (1969). The Court has since observed that the Rule 6 good cause standard was intended to be consistent with *Harris*. Per Rule 6 and *Harris*, the party seeking discovery squarely bears the "burden of demonstrating the materiality of

---

decided the issue correctly in the first instance. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

information requested" and its relation to the claims at issue. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).[9]

Critically, the Supreme Court has held that review under § 2254(d) of claims previously adjudicated on the merits "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also id.* at 185 n.7 (observing that both (d)(1) and (d)(2) clearly cabin the habeas court's review to the state court record). Thus, courts frequently reject (or defer) discovery requests where the information sought is material only to claims subject to the § 2254(d) lens, finding that the discovery would be futile and lack a good cause basis under Rule 6. *See, e.g.*, *Johnson v. White*, No. CV 7:14-117-KKC, 2017 WL 1086769, at *5 (E.D. Ky. Mar. 20, 2017) (collecting cases). As to claims not previously adjudicated on the merits and subject to § 2254(d), a petitioner may seek to establish that sought discovery is relevant to the merits of the claims, or to the showing needed to excuse any procedural default. *See, e.g.*, *Prentice v. Baker*, No. 3:10-CV-00743-RCJ, 2013 WL 1182065, at *2 (D. Nev. Mar. 19, 2013) (citing *Runningeagle v. Ryan*, 686 F.3d 758, 773–774 (9th Cir. 2012)).

---

[9] The Sixth Circuit has not resolved whether a petitioner seeking discovery must first make the threshold showing in § 2254(e)(2) to warrant an evidentiary hearing on the habeas petition. *See Benson v. Washburn*, No. 2:19-CV-02236, 2020 WL 4059859, at *2 (W.D. Tenn. July 20, 2020); *Hill v. Anderson*, No. 4:96CV0795, 2010 WL 5178699, at *8 (N.D. Ohio Dec. 14, 2010). District courts have reached differing conclusions. *Compare, e.g.*, *Moen v. Czerniak*, No. CIV.02-10-JE, 2004 WL 1293920, at *1 (D. Or. June 10, 2004) (concluding that discovery requests must be considered "in light of" the (e)(2) requirements for demonstrating entitlement to an evidentiary hearing), *with Simmons v. Simpson*, No. 3:07-CV-313-S, 2009 WL 4927679, at *5–6 (W.D. Ky. Feb. 12, 2009), *objections overruled*, No. CIV.A.3:07CV-313S, 2009 WL 4799424 (W.D. Ky. Dec. 10, 2009) (deciding that the higher (e)(2) standard does not govern discovery requests under Rule 6 and collecting authority). The Court agrees with the persuasive analysis as outlined in *Simmons* and, absent contrary authority from the Sixth Circuit, does not here hold Murphy to the more stringent (e)(2) showing in evaluating his discovery motion.

### III. ANALYSIS

As noted, Murphy raises three substantive, freestanding IAC claims in his federal habeas petition. Claim 1, however, relating to Webb's argued failure to appropriately develop Murphy's alibi defense, was fully exhausted and adjudicated on the merits by the Kentucky courts. To demonstrate relief entitlement as to Claim 1, Murphy must clear the § 2254(d) hurdle, limiting habeas review to the state court record. *See Pinholster*, 563 U.S. at 181. Accordingly, to the extent any discovery Murphy seeks is tied solely to Claim 1, the Court denies leave to conduct such discovery as futile at this time, as the Court may never have opportunity to consider evidence on that claim beyond the existing state court record. Consequently, the Court finds that there is not good cause for any discovery as to Claim 1 in the current posture.[10]

To the extent relevant to Claims 2 or 3 (or to Murphy's efforts to excuse the procedural default of those claims), the Court considers each proposed discovery request. Ultimately, the Court grants discovery as to the (related) KDMC video and AT&T phone records insofar as they pertain to Claim 2, but denies discovery as to the grand jury or police records, for the reasons outlined below.

---

[10] Though § 2254(d) plainly limits review of merits-adjudicated claims to the state record for purposes of determining *whether* to grant the habeas petition, it is conceivable that discovery, record expansion, a federal evidentiary hearing, or some combination of the three could be helpful in ultimately fashioning a remedy for whatever constitutional violation occurred *after* a petition is indeed granted. Murphy does not propose the instant discovery for the latter purpose, however, and the Court would in any event likely view such a proffered justification as premature at this stage. The Court would revisit the issue upon any renewed request made only if, and after, Claim 1 were granted. Similarly, Murphy does not argue, and the Court does not perceive, that discovery would be helpful in ascertaining whether, as a foundational matter, any of Murphy's claims are subject to § 2254(d). Per the record, there is no dispute that Claim 1 was adjudicated on the merits by the Kentucky courts and that the § 2254(d) standard applies to it; indeed, Murphy's petition anticipates and addresses the (d)(2) standard, specifically.

### A. KDMC SURVEILLANCE FOOTAGE AND AT&T RECORDS

Collectively, these categories of information relate both to Murphy's merits-adjudicated alibi-defense IAC claim (Claim 1), as well as to Murphy's unexhausted and potentially defaulted victim-impeachment IAC claim (Claim 2).[11] To the extent this discovery is material to the latter claim and may assist in resolving factual issues underlying it, the Court permits strictly cabined discovery on these topics.

Murphy argues that viewing the full surveillance video from the KDMC on the morning of July 14, 2004, would show that Murphy was present at the KDMC with Chaffins until at least 10:55 a.m., undermining the prosecution's argued timeline. Notably, the bulk of Murphy's argument for this discovery relates expressly to Claim 1; the gravamen of Murphy's quest for the full KDMC footage is his desire to show that Webb was constitutionally ineffective for failing to view and/or use the footage to establish Murphy's alibi defense and, correspondingly, attack the prosecution's alternate timeline. [*See, e.g.*, DE 48 at Page ID # 2522 (arguing that Murphy is entitled to the footage to show that the Kentucky courts unreasonably determined the facts surrounding Murphy's alibi claim in light of the evidence)]. For the reasons previously discussed, the Court denies discovery as to Claim 1 at this time, per *Pinholster* and § 2254(d)(2).[12]

---

[11] Murphy does not argue that the discovery is relevant to Claim 3 (whether the freestanding or gateway IAC portion).

[12] The Court rejects Murphy's attempt to distinguish *Pinholster* in these circumstances. [*See* DE 48 at Page ID # 2522 (suggesting that *Pinholster* applies only to (d)(1) situations involving misapplication of federal law, and not to (d)(2) scenarios entailing unreasonable determination of facts)]. The statutory text and *Pinholster* unequivocally confirm that (d)(2) review is limited to the state court record. *Pinholster*, 563 U.S. at 185 n.7. And, though *Pinholster* specifically dealt with the (d)(1) and (e)(2) interplay, its analysis provides helpful and analogous guidance in the discovery context; as previously discussed, the Court views discovery on Claim 1, which is subject to the stricter § 2254(d) standards, as premature and unsupported by good cause in the current posture.

Murphy does, however, logically tie the KDMC footage to the potential merits of IAC Claim 2. Murphy argues that evidence demonstrating Murphy's presence at the KDMC, together with other locational and temporal evidence, collectively "would have . . . contradicted the core of the victim's testimony that on the morning of the crime, Murphy had suspiciously wandered around the crime scene, and the victim had closely observed his strange behaviors." [DE 46 at Page ID # 2275]. Per the petition and accompanying documentation, this particular testimony was critical to bolstering the victim's in-court identification of Murphy. Had Webb viewed the full KDMC footage and indeed found that it supported Murphy's alibi as he suggests, she could have used such information to challenge the victim's recollection that she had observed Murphy in the store for any considerable period prior to the crime. This, in turn, may have weakened and perhaps vitiated the victim's identification testimony. Of course, whether Webb was *required* to obtain and so utilize the footage to render constitutionally effective assistance is at the heart of Claim 2, but the video's actual contents may shed material light on the IAC prongs.[13]

Accordingly, the Court finds that Murphy has demonstrated good cause to serve the proposed KDMC surveillance video subpoena, insofar as this discovery is relevant and material to asserted Claim 2 concerning Webb's failure to impeach the victim's identification testimony. Murphy has narrowly and specifically identified what he hopes or expects to find in the materials—surveillance images capturing Murphy on the KDMC

---

[13] It also appears, though Murphy does not directly so argue, that the KDMC footage (as well as the AT&T records, discussed *infra*) could be relevant to the gateway IAC claim (as to Goodwin) accompanying freestanding Claim 2 (as to Webb); the gateway inquiry would question whether Goodwin's representation at the initial collateral level sufficiently prejudiced Murphy, and such a showing might in part depend on the actual content and exculpatory value of the footage and phone records unused by Webb at the trial level.

13

premises at about 10:55 a.m. on July 14, 2004—distinguishing Murphy's request from a mere fishing effort. And he has shown that the footage, if it ultimately demonstrates that the facts are as Murphy characterizes them, would help resolve a factual issue underlying Claim 2—namely, whether Webb unreasonably failed to use the footage (and, more generally, information about Murphy's whereabouts on the morning in question) to discredit the victim's identification and to impeach her testimony that Murphy was wandering about the store suspiciously for some time before the crime, allowing her to observe him closely.

The same reasoning, generally, applies to the sought AT&T phone records from July 14, 2004. The materials, though relevant to Murphy's alibi argument, too materially relate to Claim 2 and whether Webb was ineffective for failing to use available evidence to discredit the victim's identification of Murphy. The proposed evidentiary value of the phone records mirrors that of the KDMC footage; both play an argued joint role in establishing that Murphy was not at the crime scene during the events described in the victim's testimony. To that end, both categories of evidence relate to Claim 2 and may assist Murphy in establishing that counsel was ineffective for failing to impeach the victim's testimony. And, like the KDMC footage request, the AT&T discovery request is appropriately tailored. Murphy seeks leave to obtain records for one landline phone number (that assigned to Murphy's mother's mobile home) on one discrete date (July 14, 2004). This request is thus appropriately calculated to uncover the specific and limited information that Murphy seeks to develop Claim 2.

Ultimately, Murphy has shown that the KDMC footage and AT&T records both may be material (in conjunction with other related evidence) to Claim 2 and that, if the

facts are shown to be as Murphy describes them, he may be entitled to relief on freestanding IAC Claim 2.[14] *See Harris*, 394 U.S. at 300; c*f. Stanford*, 266 F.3d at 460 (characterizing a discovery attempt as a "fishing expedition" where it "would not resolve any factual disputes that could entitle [the petitioner] to relief, even if the facts were found in his favor"). The Court thus finds good cause under Rule 6 for the first and third categories of discovery and will permit Murphy leave to conduct the same for the limited Claim 2 purposes here described.

**B.    GRAND JURY TESTIMONY AND POLICE RECORDS**

In contrast with the narrow, carefully targeted discovery requests discussed above, Murphy's requests for discovery of the grand jury and police records related to his case are speculative and ill-defined. First, Murphy argues that the grand jury records *may* reflect inconsistent statements by the victim and/or other government witnesses. [DE 46 at Page ID # 2275–76]. Though Murphy further contends that the inclusion of such inconsistent statements is "highly probable" given the victim's apparent failure to identify Murphy to police, he does not define what sort of "inconsistent statements" he believes the testimony reflects. Nor does he explain exactly how such statements would be material to Claim 2 or Claim 3 (or their corresponding gateway claims), beyond broadly stating that any inconsistent statements on behalf of the victim or other Commonwealth witnesses could have been used to impeach them. Though true as an overarching matter, this logic falls short of concretely linking the specific grand jury records to the instant habeas theories or specifying what Murphy hopes to locate and how he hopes to use the information. The

---

[14] This is only if, of course, the Court ultimately finds cause and prejudice to excuse the procedural default of Claim 2. As previously noted, the sought discovery could potentially be relevant to such a cause and prejudice showing, as well.

Court thus views the grand jury request as considerably more akin to a fishing expedition than the KDMC or AT&T requests and, as a result, finds it unjustified per Rule 6.[15]

The police records request faces a similar fate. Murphy's presumption that the police records contain relevant, and yet-unproduced, information rests solely on the absence of a signed *Miranda* waiver form in Murphy's file. [*See* DE 46 at Page ID # 2277–78]. Because the file *does* contain *Miranda* waiver forms as to other defendants and witnesses interviewed in the case, and because Murphy does not explicitly recall failing to complete such a form, he surmises that it must have existed, and the file produced must have been incomplete. The layered speculation underlying Murphy's logic in this regard, however, easily unravels upon close inspection and dooms the discovery request. There is no concrete evidence that Murphy ever in fact completed such a *Miranda* waiver, or that it was ever placed in his police file.

Nor, even if the record conclusively showed that *this* particular form was missing from the file, has Murphy demonstrated that *other* records are indeed missing. The Court thus disagrees with his categorical assertion that, given the purportedly missing form, "the police must have provided Murphy with incomplete records." [DE 46 at Page ID # 2277]. And, moreover, Murphy has not specifically identified any such other records that he believes are missing or explained how they might be material to Claims 2 or 3. His

---

[15] The Court does not agree that Kentucky RCr 5.16(3) requires production of the grand jury records in this context. Though it guarantees "that any person indicted by the grand jury shall have a right to procure a transcript" of the underlying grand jury proceedings in connection with the underlying criminal case, the Rule does not alter the discovery standard in collateral proceedings. *See generally Wagner v. Com.*, 247 S.W.3d 540, 542 (Ky. Ct. App. 2008) (observing that RCr 5.16(3) and interpretive case law arise in the context of *pretrial discovery* and do not alter the standards applicable to post-conviction discovery requests).

conclusory contention that they "could" be relevant to either his alibi or impeachment claim, without explanation or particularized details, is unavailing. *See, e.g.*, *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (emphasizing that "specific allegations of fact" are required to warrant discovery and that "Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations") (internal quotation marks omitted). For these cascading reasons, Murphy has not shown good cause for the sought police records.

## IV. CONCLUSION

For the reasons thoroughly discussed in this Opinion, the Court **ORDERS** as follows:

1. Finding good cause for the requests under Rule 6, the Court **GRANTS** DE 46, **in part**, as to the KDMC surveillance footage and the AT&T phone record subpoenas, to the extent they are relevant to Claim 2;

2. The Court **DENIES** DE 46, in remaining part, as to the grand jury testimony and the police records; and

3. Petitioner **SHALL** have **45 days from the date of this Order** to engage the authorized discovery and to supplement the record as to Claim 2 (or its accompanying gateway IAC claim) to the extent desired. Within that time period, Petitioner may file a written supplemental brief, supplying any new arguments or evidence as developed via the here-authorized discovery. Respondent then may have **an additional 30 days** following Petitioner's supplemental filing to respond in writing to any such arguments or evidence. This matter will then stand formally submitted to the undersigned for a Report and Recommendation on all claims and issues.

The undersigned enters this Opinion & Order on a non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A).  Within fourteen (14) days after being served with a copy of this Memorandum Opinion, either party may appeal this decision to the District Judge pursuant § 636(b)(1)(A) and FED. R. CIV. P. 72(a).

Entered this the 29th day of September, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge