## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## ASHLAND

WAYNE C. MURPHY,                     )
                                     )
                                     )
        Plaintiff/Petitioner,        )
                                     )
v.                                   )          NO. 0:20-CV-00058-KKC-MAS
                                     )
JESSIE FERGUSON,                     )
**Warden, Roederer Correctional**   )
**Complex,**                         )
                                     )
        Defendant/Respondent.        )

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Plaintiff/Petitioner Wayne C. Murphy's ("Murphy") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [DE 1]. The petition, originally filed in the Western District of Kentucky, was transferred to this district on May 26, 2020. [DE 14]. After screening Murphy's petition pursuant to the Rules Governing Section 2254 Cases in United States District Courts, the Court ordered Defendant/Respondent Warden Jessie Ferguson ("the Warden") to respond to the petition. [DE 24].

After allowing Murphy, by counsel, to conduct discovery as permitted by the Rules Governing Section 2254 Cases, the Court determines that the petition is now fully briefed and ripe for review.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.     MURPHY'S UNDERLYING CRIMINAL CONVICTION

Murphy was convicted by a Greenup Circuit Court jury on counts of first-degree rape, first-degree assault, and first-degree robbery in 2008. On direct appeal, the Supreme Court of Kentucky detailed the events underlying his conviction as follows:

> On the afternoon of July 14, 2004, Jane Doe[1] was working at her long-time place of employment, the Superstar Video store in Russell, Kentucky. A man entered the store and after looking around, made his way to an employee-only area in the back of the store. Ms. Doe told the man he was not allowed in that area, whereupon he cursed at her and left the store. She then began cleaning the store.
>
> Shortly thereafter, a second man entered the store. He attempted to rent a movie, but was told by Ms. Doe he would first have to establish a membership with the store. This man, Ryan Dixon, gave his driver's license to Doe, and she entered his biographical information into the store's computer. Dixon left with his movie after telling Doe he was going to go talk to a friend, but indicated to Doe he would return to select another movie.
>
> Doe had resumed cleaning the store when she heard the scuffling of boots across the floor. Before she could react, Doe was struck on the back of the head. Doe was then dragged to the office area in the back of the store by Dixon and the man who had entered the store earlier, the man Doe would later identify as [Murphy]. Doe testified that Murphy beat her severely and demanded that she open the safe. Murphy kicked Doe in the stomach when she told him there was no money in the store's safe because she had just made a bank deposit. Doe further testified that when Murphy saw a picture of Doe's son he told her he would go to her house and cut her son's throat if she did not open the safe.
>
> Doe testified that she attempted to escape after Murphy demanded the ring she was wearing. She threw the ring and ran, scrambling up the store's shelves in an attempt to climb through the drop ceiling and into a bathroom. But Murphy grabbed Doe by the hair and dragged her into

---

[1] Consistent with the state court record and the parties' briefing, the Court shall refer to the victim as Jane Doe.

a back room where, armed with a hammer, he violently raped Doe while Dixon held her down. Doe testified that after the rape, Murphy told her "kiss your ass goodbye and pray you go to heaven," before striking her viciously atop her head with the hammer.

Doe was discovered nude and bleeding by a customer who telephoned 911 telling the dispatcher that Doe was bleeding profusely with bone protruding from her skull. Doe suffered a near-fatal subdural hematoma in addition to abrasions and contusions to the arms, shoulders and vaginal area. Doe has undergone five surgeries arising from the injuries suffered in the attack.

Detective Tim Wilson of the Russell Police Department testified at trial that Dixon was immediately identified as a possible suspect because his personal information was still on the video store's computer when police arrived. This information would help lead the police to Dixon who implicated Murphy. Murphy was arrested two days later.

*Murphy v. Com.*, No. 2007-SC-000176-MR, 2008 WL 1850626, at *1–2 (Ky. Apr. 24, 2008) (internal footnotes omitted).

Murphy's account of what occurred July 14, 2004 is starkly different than the prosecution's narrative that prevailed at trial and on appeal. According to Murphy, his day began with his attending a 9:00 a.m. prenatal appointment at King's Daughters Medical Center ("KDMC") with his girlfriend, Tracy Chaffins ("Chaffins"). [DE 1, PageID# 8]. They were dropped off at the appointment by Dixon, who Murphy avers was a mere acquaintance. [DE 1, PageID# 13]. When Dixon did not return to KDMC following the appointment to pick them up, Murphy says Tracy called her uncle, John Hurst, who picked them up from KDMC. [DE 1, PageID# 8]. AT&T records establish that Chaffins called Hurst first at 10:00 a.m., and again at 10:55 a.m. [DE 1, PageID# 11]. Murphy says they were picked up shortly after the second call.

3

After leaving KDMC, Murphy, Chaffins, and Hurst proceeded to run errands in the area. [DE 1, PageID# 8–9]. The first stop they made was at a Speedway gas station. Next, the trio traveled to Ironton, Ohio, where Murphy had an outstanding fine. Chaffins went inside the municipal court to pay the fine while Murphy waited outside in the car with Hurst. Substantiating Murphy's timeline is evidence that the arrest warrant for the next person to pay a fine at the same location was discharged at 11:49 a.m. [DE , PageID# 10]. Next, Murphy says they went to Save A Lot to buy groceries, stopped at Rich Oil to get gas, and then Hurst dropped them off at Murphy's house in Ironton, Ohio around 1:00 p.m., where he and Chaffins watched *Days of Our Lives*. [DE 1, PageID# 13].

Uncontroverted evidence indicates that Doe's assault occurred between 12:08 p.m. (when Superstar Video computer records showing Dixon opened a Superstar Video account) and 1:03 p.m. (when a customer called 911 upon finding Doe wandering the store bleeding and naked from the waist down). [DE 1, PageID# 5, 9]. The Commonwealth's principal witness substantiating this timeline was John Barger ("Barger"). Barger testified at trial that he was in Ashland with his wife and children looking for work on July 14, 2004. [DE 36-2, PageID# 590]. He visited Superstar Video, which had a sign in the window indicating that it was hiring, between 12:30 p.m. and 12:45 p.m. [DE 36-2, PageID# 591].

According to Barger, when he entered the store, he saw a white male who was later identified as Dixon. Dixon acknowledged him but otherwise was not acting suspiciously. Barger testified that the man had dark hair under a blue bandana and

that he was wearing a white muscle shirt underneath a blue button-up shirt. [DE 36-2, PageID# 592–93]. As Barger walked further into the store, Dixon came behind him, and Barger saw Doe on her hands and knees and in distress. [DE 36-2, PageID# 594]. He then saw another white male, who Barger later identified as Murphy, emerge from another area of the store, and pick Doe up by her hair. At trial, Barger did not recall the second male's clothing, only that he had blood on his face, a goatee, and a short mullet. [DE 36-2, PageID# 594–96]. A few moments later, the first male left the store and Barger saw an opportunity to leave. He testified that he got into his car, did not tell his wife what he saw, and that they proceeded to go to several other stores in the area: Dollar Tree, Fashion Bug, and Kroger's. After leaving Kroger's, he and his wife observed multiple police cars parked outside Superstar Video. [DE 36-2, PageID# 604]. At this point, Barger decided to approach law enforcement and tell them what he had seen inside the store. He gave a statement to an officer on the scene, offering a description of the first male he encountered (Dixon), but did not mention a second male. [DE 36-2, PageID# 607]. The officer also took down his information.

The next day, Russell Police Department contacted Barger, asking if he could return to the area to give another statement. On July 15, 2004, around 9:50 p.m., Barger gave a statement to Officer Kenneth Barker, stating the following:

> Between 12:30 p.m. and 12:45 p.m. I walked into Superstar Video to get an application because they had a sign on the door "Now Hiring". When I walked in, there was one male in the store, and after I walked towards the back I saw a girl on her hands and knees in the floor near the back exit sign. I could tell she was obviously hurt. I turn around to see where the other male was in the store, at that time he walked to the Employee's

> Only door, opened it, looked inside then turned and walked past me out the door.  He was dark complected, dark eye brows, blue bandana around head, muscle shirt under button down shirt.

[DE 1-4, PageID# 76].  After taking Barger's statement, law enforcement showed him a photo array with Dixon's photo.  Barger identified Dixon as the man whom he saw in the store.  According to a search warrant obtained by Russell Police, multiple witnesses described a vehicle matching the Dixon's car, stating that they he observed him cleaning out his vehicle down the street from Superstar Video.  [DE 1-5, PageID# 78].  Dixon was arrested that day.

After being interrogated, Dixon admitted to his involvement in the assault but pointed the finger at Murphy as being the primary perpetrator of Doe's rape and assault.  Based on Dixon's statement alone, law enforcement sought and obtained a criminal complaint and arrest warrant for Murphy, who was arrested on July 16, 2004 and was charged with assault, robbery, and rape on September 10, 2004.  [DE 1, PageID# 12].  Initially, he was represented by appointed counsel, Samuel Weaver.  On November 19, 2004, through trial and until judgment was entered, Murphy was represented by Robin Webb.

 At trial, the Commonwealth had no forensic evidence placing Murphy at the crime scene at this time or any other time.  Instead, it relied upon three key pieces of evidence: (1) Barger identifying Murphy as one of two males in the video store during the assault; (2) Doe's identification of Murphy as her second assailant; and (3) and testimony by cellmate Donald Eugene Howard claiming that Murphy had made a jailhouse confession that he assaulted Doe.  At trial, Webb highlighted the lack of forensic evidence and also attempted to undermine the credibility of Barger, Doe, and

Howard.  Ultimately, however, the jury returned a guilty verdict on the assault, robbery, and rape charges.

**B.**   **DIRECT APPEAL**

On appeal, Murphy raised four arguments.  He argued, first, the trial court erred by admitting testimony concerning microscopic hair analysis because hair analysis alone, unlike DNA, cannot positively identify someone; second, he was unfairly prejudiced when the trial court erroneously admitted evidence about the results of a presumptive blood test that could not confirm human blood or allow DNA testing; third, the trial court erred by denying his motion for a directed verdict of acquittal due to insufficient evidence; and fourth, the trial court erred by ordering that his sentences be served consecutively, rather than concurrently.

The Supreme Court of Kentucky issued its opinion on April 24, 2008.  *Murphy v. Com.*, No. 2007-SC-000176-MR, 2008 WL 1850626 (Ky. Apr. 24, 2008).  The court only found error in the trial court's decision to order Murphy to serve consecutive sentences.  *Id.* at *4.  Under Kentucky law, definite sentences must run concurrently with indefinite sentences, so the trial court's decision to have Murphy's 20-year sentences for assault and robbery to run consecutive with his life sentence was palpable error.  *Id.*  The case was remanded for sentencing in accordance with K.R.S. § 532.110(1)(a).  *Id.*  On September 25, 2008, Greenup Circuit Court entered an order amending Murphy's sentences for assault and robbery to run concurrently with Murphy's sentence for rape.

## C.   COLLATERAL ATTACK IN STATE COURT

On July 22, 2011, Murphy filed a *pro se* Motion to Vacate in Greenup Circuit Court pursuant to Kentucky Rule of Criminal Procedure 11.42 ("RCr. 11.42"). [DE 36-4, PageID# 1666].  He raised several claims, including that (1) he was denied conflict-free counsel at the trial and appellate levels; (2) trial counsel was constitutionally ineffective; (3) he was denied the right to confront witnesses; and (4) the cumulative effect of counsel's errors made it impossible for Murphy to receive a fair trial.  Murphy's ineffective assistance of counsel claims included assertions that trial counsel failed to adequately investigate possibly exculpatory evidence or witnesses that could substantiate his alibi; trial counsel failed to object to the prosecutor's statements regarding Murphy's burden to prove an alibi; and trial counsel failed to object to the prosecutor's statements regarding the credibility of Doe, fact witnesses, and expert witnesses.

On April 16, 2012, Michael Goodwin entered his appearance on behalf of Murphy, and Goodwin filed a supplemental brief in support of Murphy's RCr. 11.41 motion on May 27, 2014.  [DE 36-4, PageID# 1771].  Goodwin also filed a Motion for Relief from Judgment pursuant to RCr. 60.02, asserting that Doe had subsequently admitted to a private investigator that Murphy had not assaulted her.  [DE 36-4, PageID# 1767].  The supplemental brief bolstered some of his original claims asserted in the *pro se* RCr. 11.42 motion, including that trial counsel was ineffective when she failed to investigate security camera footage from KDMC that showed Murphy at the hospital with Chaffins.  The supplemental brief also argued that the Commonwealth violated *Brady v. Maryland* when it partly withheld security camera footage that the

8

trial court had ordered be produced, resulting in defense counsel only receiving a truncated version of the footage that omitted potentially exculpatory evidence of Murphy's alibi.  Finally, the brief argued that there is evidence that verifies that Murphy was at the Ironton courthouse at the time Doe's assault occurred and that the trial court should permit an evidentiary hearing to allow such evidence to be presented.

On November 24, 2015, Greenup Circuit Court held an evidentiary hearing and heard testimony from Doe and the private investigator who claimed that Doe had recanted her identification of Murphy as one of her assailants.  [DE 36-4, PageID# 1794].  Based on the testimony, the court summarily denied Murphy's RCr 60.02 motion and continued the RCr. 11.42 issues to a subsequent hearing.  [DE 36-4, PageID# 1796].  Murphy filed a second supplemental brief in support of the RCr. 11.42 motion.  Greenup Circuit Court ultimately held a hearing on October 26, 2016. [DE 36-4, PageID# 1809].  Murphy, *pro se*, moved for a rehearing on his 11.42 motion, citing several purported errors by the attorney who represented him during the hearing, Linda Bullock.  [DE 36-4, PageID# 1808].

The court entered an order denying Murphy's RCr. 11.42 motion on February 6, 2017.  [DE 36-4, PageID# 1820].  The court limited its order to the issues that arose during the evidentiary hearing after noting that Murphy's filings were "copious[]," "overwhelming," and "seem to be perpetual."  [DE 36-4, PageID# 1822].  So, the court addressed and found no merit to six of Murphy's claims of ineffective assistance of counsel.

On February 16, 2017, Murphy, by counsel, moved for a written ruling on Murphy's pending RCr 60.02 motion, which the Greenup Circuit Court left unresolved in its February 6, 2017 ruling.  [DE 36-4, PageID# 1832].  The court ultimately denied Murphy's motion, finding that the private investigator's testimony that Doe had admitted to not being able to positively identify Murphy was uncredible. [DE 36-4, PageID# 1834–35].

Murphy appealed the Greenup Circuit Court's denial of his RCr 11.42 and 60.02 motions. First, he argued that the Court should reverse the lower court on the merits of his ineffective assistance of counsel claims.  His subsequent arguments rested on purported errors by the Greenup Circuit Court during his post-conviction proceedings, including that the court did not allow Murphy to present certain evidence during his evidentiary hearing on his 11.42 motion; and found that he had waived the arguments that did not arise during the evidentiary hearing; and denied Murphy's request for funds to retain expert witnesses that could speak to Doe's diminished ability to recall the details surrounding her assault to demonstrate the prejudice inherent in trial counsel's ineffective assistance when he failed to utilize similar expert testimony.  [DE 36-4, PageID# 1870–85].  Murphy's final contention on appeal is that his post-conviction was ineffective because he failed to raise meritorious issues during his evidentiary hearing.  [DE 36-4, PageID# 1885].

The Kentucky Court of Appeals affirmed the Greenup Circuit Court's denial of both.  *Murphy v. Commonwealth*, No. 2017-CA-000596-MR, 2019 WL 2157583 (Ky. Ct. App. May 17, 2019).  First, the court held that Murphy had waived all issues

concerning the RCr 60.02 order because he did not brief them.  Second, the court affirmed the Greenup County Circuit Court's denial of Murphy's RCr 11.42 motion in all respects.  On the merits of Murphy's ineffective assistance of counsel claims, the court held that Murphy's trial counsel's performance did not constitute ineffective assistance and that the prosecutorial comments during closing arguments were within acceptable boundaries of legal advocacy and did not unfairly prejudice the jury against Murphy.  Additionally, trial counsel's strategic decisions, including not objecting to certain statements and not employing specific experts, were considered sound and not indicative of deficient performance. *Murphy*, 2019 WL 2157583, at *4–5.

The Kentucky Court of Appeals also affirmed the trial court's decisions regarding certain procedural issues Murphy raised in his briefing.  For instance, Murphy contended that he was improperly restricted from presenting evidence that could substantiate his alibi, specifically relating to the payment of a fine in Ironton, Ohio, on the day of the assault.  *Id.* at *5.  He argued this evidence was crucial to demonstrating his absence from the crime scene.  The Kentucky Court of Appeals, however, found that the trial court had appropriately managed the evidentiary scope. It noted that the evidence concerning the fine payment—handled by someone other than Murphy—had already been introduced during the trial.  The court highlighted that Murphy's fiancé and her uncle, who were with him at the time, had testified about their activities, including the payment of the fine.  Importantly, the appeals court pointed out that this testimony was part of the defense's strategy to establish

an alibi for Murphy, thus indicating that the jury had already considered this evidence when rendering their verdict.  The court reasoned that reintroducing or expanding upon this evidence in the post-conviction hearing would not have altered the outcome, as the core issue was not who paid the fine but rather Murphy's location during the crime. Since the jury had not found the alibi credible enough to acquit, further evidence along similar lines would have been unlikely to change the jurors' perception and the outcome of the trial.  Moreover, the court underscored that an evidentiary hearing is not compelled to reexamine issues that have already been resolved at trial unless new, substantially impactful evidence is presented.

 As to the Greenup Circuit Court's denial of expert funds during Murphy's post-conviction proceedings, Murphy contended that the lack of expert testimony on the effects of head injuries on memory significantly hampered his ability to challenge the credibility of the victim's testimony, which was crucial to his claim of ineffective assistance of counsel.  He argued that without this expert testimony, he could not effectively demonstrate that the victim's recollections were unreliable, thereby prejudicing his defense.  The court, however, affirmed the Greenup Circuit Court's decision to deny funding for an expert witness, reasoning that there is no constitutional right to expert assistance in collateral attacks.  *Id.* at *6.

While Kentucky law does permit the procurement of expert testimony in post-conviction settings if shown to be reasonably necessary, the court found that the trial court maintained appropriate discretion in determining the necessity of such testimony.   The court supported its decision by highlighting the testimony of

Murphy's trial counsel, who had strategically chosen not to employ a head injury expert during the initial trial.  The trial counsel testified that focusing on the victim's medical records and direct questioning would be more effective and was concerned that an expert might be perceived as a "hired gun," potentially undermining Murphy's overall defense. The Kentucky Court of Appeals found that trial counsel's decision was deemed a reasonable strategic choice under the circumstances and, therefore, allowing post-conviction counsel to hire an expert to elicit such testimony would have not impacted the outcome of Murphy's claims under *Strickland*.

Finally, the Kentucky Court of Appeals determined the Greenup Circuit Court did not err by not addressing every claim presented in his RCr 11.42 motion.  *Id.* at *5–6.  The court noted that Murphy had failed to specify most of these claims in his appellate brief, effectively limiting the scope of the court's review to the claims he did articulate.  The court emphasized the procedural principle that it is the appellant's responsibility to clearly argue the grounds on which relief should be granted.  Since Murphy did not adequately articulate the merits of his additional claims on appeal, the court held that he had waived any further appellate review of those claims. Furthermore, the Kentucky Court of Appeals found that, despite its summary denial of Murphy's RCr 11.42 motion,  the trial court had conducted a comprehensive review of all filings and ruled broadly against Murphy's motion for relief given its familiarity with the case and its procedural history.

The Supreme Court of Kentucky denied Murphy's motion for discretionary review of the Court of Appeals' decision on March 18, 2020.  [DE 36-4, PageID# 1980].

D.    **2254 PETITION AND DISCOVERY EFFORTS**

Murphy, by counsel, filed his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on May 18, 2020.  [DE 1].  At the outset of these proceedings, Murphy moved for leave to conduct discovery and to serve subpoenas for four categories of discovery to support his claims in the habeas corpus petition.  [DE 46].  These requests included seeking: (1) video surveillance footage from the KDMC from the morning of the crime; (2) grand jury transcripts from the proceedings underlying Murphy's indictment; 3) AT&T phone records from Murphy's mother's mobile home on the date of the crime; and (4) all police records related to Murphy's case.

The Court granted some, but not all, of the sought discovery.  [DE 46].  The Court permitted discovery regarding the KDMC surveillance footage and AT&T phone records based on their potential relevance to Murphy's claim of ineffective assistance of counsel. Specifically, the KDMC footage and phone records could potentially contradict critical testimony from the victim and support Murphy's assertion that his attorney failed to adequately challenge the victim's identification of him.  The Court found that Murphy had demonstrated good cause for this discovery as it directly related to the core of his ineffective assistance of counsel claim. However, the Court denied discovery as to the grand jury transcripts and all police records, determining that they were not sufficiently relevant to the specific claims at hand.

Murphy again moved to conduct supplemental discovery after he discovered that the Russell Police Department neither possessed the KDMC footage nor had any record of its possession.  [DE 69].  Murphy's motion requested subpoenas for Russell

PD records related to Murphy's case, a deposition of former Russell Police Department detective Tim Wilson, a list of all current and former officers involved in handling the KDMC surveillance footage, and further depositions based on that list. The Warden did not object to a targeted discovery related to the KDMC video from the Russell Police Department but expressed other concerns regarding scope.  [DE 74].  Accordingly, the Court granted Murphy's request for supplemental discovery by strictly limiting the scope of subpoenas and depositions related to the custody, retention, or use of the KDMC video.  [DE 77].

In the final episode of the saga of discovery in Murphy's § 2254, Murphy moved for leave to introduce newly discovered evidence in support of his petition.  [DE 89]. During this supplemental discovery process, Murphy's attorneys deposed Officer Earl Riley, who had signed the affidavit supporting Murphy's arrest warrant on July 16, 2004.  Officer Riley, despite being the affiant, testified about his limited involvement in the investigation of the crime for which Murphy was convicted.  Murphy argued that this new evidence supported his claim that the arrest warrant lacked probable cause and that his trial attorney was ineffective for not asserting a Fourth Amendment violation.  The Court construed Murphy's motion as a motion to amend his § 2254 petition and ultimately denied[2] Murphy leave to introduce Officer Riley's deposition testimony and allow Murphy to assert a new Fourth Amendment violation not asserted in his original § 2254 petition nor in state post-conviction proceedings.

---

[2] The undersigned issued a Report & Recommendation on Murphy's motion which, with there being no objection from either party, Judge Caldwell adopted as the Court's opinion.  [DE 97].

## II.   STANDARD OF REVIEW

Pursuant to the Antiterrorism and Death Penalty Act ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard of review is "highly deferential" and "difficult to meet."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."  *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

This exacting standard only applies with respect to claims that were adjudicated on the merits in the state court proceedings.  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  The federal courts must consider any procedural-bar issue that would preclude consideration of the petitioner's claims on the merits, including the procedural bar of the claims raised

16

in the habeas petition that were not adjudicated in the state court. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Where the petitioner makes a factual argument, "[t]he federal court must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003).

## III.   ANALYSIS

### A.   TIMELINESS OF PETITION

Murphy filed his § 2254 petition on May 18, 2020. The Warden argues that Murphy's petition is untimely. Under AEDPA, a one-year period of limitation begins to run from the latest of one of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).  Respondent argues the statute of limitations should run from the date Murphy's judgment became final—when the trial court entered its Amended Judgment.

However, Murphy contends the statute of limitations for his petition should not run from the date his conviction became final, but rather from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  Murphy argues that two pieces of newly-discovered evidence supporting his claims of ineffective assistance trigger a later commencement of the statute of limitations.  First, Murphy received a letter from the Kentucky Lottery Commission, dated January 10, 2011, in response to his request for lottery records.  He claims these records corroborate his alibi and would have undermined the prosecution's timeline by approximating when he was at Speedway on the day of the assault.  He asserts that this evidence serves as the factual predicate for his claim that trial counsel was ineffective for not adequately investigating and discovering crucial exculpatory evidence to be presented at trial and serves as a factual predicate for Claim 1.

The second piece of newly-discovered evidence is a January 20, 2011 letter in response to an Open Records Request for "When the Identification took place/occurred, when the victim allegedly identified, chose the photo of Mr. Wayne Murphy."  [DE 45-1, PageID# 2168].  Murphy obtained this letter after previously requesting and receiving police interview notes from Russell Police Department's

second interview with Doe, during which she failed to identify him as her attacker for the second time.  According to Murphy, the absence of any record of identification, coupled with the interview notes, serves as the factual predicate for Claim 2, in which he argues that his trial counsel failed to investigate, obtain, or utilize this information to challenge the victim's testimony at trial.

When assessing if a petitioner's statute of limitations began under § 2244(d)(1)(D), courts typically examine whether the petitioner exercised due diligence in uncovering the factual basis for their claims.  *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006).  However, this inquiry is unnecessary here because the evidence Murphy presents does not constitute a "factual predicate" for his claims that would delay the start of the limitations period under § 2244(d)(1)(D).  Rather, the evidence is merely "cumulative of knowledge that [Murphy] already possessed that would support his claims."  *Hubbard v. Rewerts*, No. 21-2968, 2022 U.S. App. LEXIS 14886, at *7 (6th Cir. May 31, 2022).  "[E]vidence that is merely cumulative cannot form the newly discovered factual predicate for a habeas claim, even if the evidence lends additional support to the claim."  *Id.* (citing *Souter v. Jones*, 395 F.3d 577, 587 (6th Cir. 2005)).

Although the evidence Murphy discovered seems relevant to his claims, it does not meet the criteria to restart the statute of limitations under § 2244(d)(1)(D).  Section 2244(d)(1)(D) is triggered when a petitioner demonstrates that he uncovered "vital facts" that were "previously unknown" and that those facts serve as the predicate for his claims.  *See Sistrunk v. Rozum*, 674 F.3d 181, 189 (3d Cir. 2012)

(holding "[a] letter from a witness recanting his testimony against the [petitioner] was not newly discovered evidence that could permit a tardy state filing" because the petitioner "not only could have known, but actually <u>did</u> know of the vital facts underlying . . . [the letter] . . . long before the filing of his habeas petition"). Newly uncovered information that "merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (citing *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012)) (internal quotation marks omitted).

Here, the Kentucky Lottery Commission letter suggesting Murphy's presence at Speedway between 10:39 a.m. to 12:54 p.m. is new, yet not critical, as it only supplements existing evidence related to his alibi timeline. In his petition, Murphy cites several alleged failures by counsel related to investigating Murphy's alibi, all of which Murphy knew, or should have known if he exercised due diligence, at the time of his Amended Judgment. [DE 1, PageID# 33 (listing nine (9) failures to investigate related to Murphy's alibi)]. Furthermore, the record reflects evidence of the inconsistent timestamps on the Speedway cash register and Speedway security camera footage. The Kentucky Lottery Commission letter supporting evidence that was already available does not merit applying § 2244(d)(1)(D).

Likewise, the January 20, 2011 letter from the City of Russell, indicating police had no documentation on when Doe identified Murphy as her assailant, supports but does not independently substantiate his claim of ineffective assistance of counsel.

Murphy details several other bases for counsel's ineffective assistance to her failure to adequately investigate and subsequently impeach Doe's trial testimony, including counsel's failure to adequately question Doe about the second photo array by using police interview notes that demonstrated that Doe had adequately examined the photo array and still failed to identify Murphy.  [DE 1, PageID# 44–45].

In sum, § 2244(d)(1)(D) may only be triggered when a petitioner asserts claims with "previously unavailable factual bases."  1 Federal Habeas Corpus Practice and Procedure § 3.3 (2023).  The facts suggested by the newly discovered evidence presented by Murphy are merely cumulative of knowledge that Murphy had or should have had at the time his conviction became final.  Thus, the Court shall not apply a later commencement date of the statute of limitations.  Rather, the statute of limitations shall run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  In Murphy's case, his judgment became final on October 25, 2009, a year after the Greenup Circuit Court entered an Amended Judgment on September 25, 2008.[3]  [DE 36-4, PageID# 1515].  With no intervening events to toll this finality, his habeas petition filed on May 18, 2020, is consequently untimely.

---

[3] A criminal judgment becomes final upon the conclusion of the direct review of a sentence imposed at a resentencing proceeding.  *Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012).  Under Kentucky law, Murphy had thirty (30) days to appeal the trial court's Amended Judgment, or until October 25, 2008.  Ky. R. App. P. 3(A)(1).  So, under § 2244(d)(1), the statute of limitations began running from the date he ran out of time to request a direct review of his new sentence.  The statute of limitations, therefore, expired one year later, October 25, 2009.

**B.**   <u>EQUITABLE TOLLING</u>

Alternatively, in his Reply, Murphy argues for the application of equitable tolling to extend the AEDPA limitation period applicable to his § 2254 petition.  [DE 45, PageID# 2022].  The Sixth Circuit recognizes that equitable tolling may allow review of an otherwise time-barred habeas petition "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011 (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)); *see also Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001)).

To be entitled to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *see also Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).  Importantly, "[e]quitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the ultimate burden of persuading the court that he or she is entitled to equitable tolling.'"  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

As for the first *Pace* prong, Murphy's diligence is evidenced by his consistent pursuit of legal remedies following his conviction, which the Court has detailed above. He directly appealed his conviction and sentence, partially succeeding and obtaining an Amended Judgment on September 25, 2008.  Between February 2008 and October

2009, Murphy submitted at least eight (8) open records requests to several governmental entities seeking information he believed to be exculpatory. On October 9, 2009, he initiated post-judgment discovery in Greenup Circuit Court, seeking critical evidence including the victim's medical records and grand jury testimony [DE 45-3, PageID# 2293–96]. Despite the Commonwealth's resistance, Murphy persisted in his efforts to secure these materials, demonstrating diligence in his pursuit of rights. In all, between 2008 and 2012, he submitted over thirty requests for various records pertinent to his case [DE 45-5]. Murphy's relentless pursuit of evidence, his RCr 11.42 motion, and his vigor in pursuit of discovery in this federal proceeding further substantiate his diligence as required by *Pace*.

Diligence is not where the inquiry stops. Murphy must also demonstrate that extraordinary circumstances prevented him from complying with AEDPA. "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000) (citations omitted). Murphy cites several impediments that he argues justify equitable tolling of the AEDPA limitations period, all occurring before he filed his RCr 11.42 motion: (1) unresponsiveness of government entities to his open records requests; and (2) his transfer from Eastern Kentucky Correctional Complex to Scioto County Jail, during which he was deprived of his legal materials from March 11, 2009, to July 30, 2009; and (3) repeated denials of access to the law library by prison staff [DE 45, PageID# 2025].

23

First, the Court finds that Murphy has not shown that the government entities who were recipients of his open records requests were insufficiently responsive to amount to an extraordinary circumstance.  Of the thirty-one open records requests detailed in DE 45-5, recipients responded to twenty-one within a month.[4]  Murphy appealed several denials, and the Kentucky Attorney General intervened once to grant him access to records initially withheld by the Greenup County Jailer [DE 45-11, PageID# 2471].  On this record, the Court cannot conclude that the responsiveness of the government entities meets the threshold for an extraordinary circumstance.

Second, Murphy argues that his transfer from Eastern Kentucky Correctional Complex to Scioto County Jail qualifies as an extraordinary circumstance justifying equitable tolling.  While "limited access to the law library, regardless of the cause" is "generally insufficient to justify equitable tolling[,]" *Ruff v. Mazza*, No. 23-5532, 2023 U.S. App. LEXIS 26884, at *4 (6th Cir. Oct. 10, 2023), the Court recognizes that this transfer hindered his access to his own legal documents, prevented him from conducting additional research, and prevented him from collecting evidence that he could use to support his RCr 11.42 motion.  These circumstances are appropriate considerations when assessing whether extraordinary circumstances stood in a habeas petitioner's way and if such circumstances merit equitable tolling.  *See Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) (applying equitable tolling when petitioner demonstrated he was actively impeded by prison transfers and was

---

[4] The record does not indicate either the request or response date for seven (7) of Murphy's requests.  Three open records requests received responses within forty-five (45) days.

unable to secure supporting evidence and improve his legal knowledge of habeas proceedings).

Here, Murphy was transferred on March 11, 2009, 137 days after his judgment became final, and returned on July 30, 2009, a period of 141 days during which he lacked access to his legal materials and a law library. Murphy has sufficiently demonstrated that this transfer was an extraordinary circumstance that stood in the way of preparing his state post-conviction motion, the filing of which would have tolled the AEDPA deadline. Accordingly, the Court shall toll the 141 days, extending his AEDPA filing deadline to March 10, 2010. Despite this extension, Murphy did not file his § 2254 petition until May 18, 2020—more than a decade beyond the tolled deadline.

Third, Murphy argues for equitable tolling based on alleged obstruction by prison officials at Eastern Kentucky Correctional Complex, which he claims impeded his access to the law library. He supports his claim with a letter dated December 23, 2009, addressed to "Ms. Litteral," presumably an administrator at the prison. The letter details a series of incidents over three days, starting December 21, 2009, during which multiple officers repeatedly denied him access to the law library. [DE 45-1, PageID# 2221]. According to the letter, Murphy's requests for a library pass were denied because he did not demonstrate an imminent legal deadline.

Murphy suggests a systemic issue within the prison regarding the criteria used to grant library access, potentially impacting Murphy's ability to conduct necessary legal research and prepare filings. The letter specifically describes interactions with

several officers who, despite Murphy's explanations of needing to access legal materials for his case, refused to provide him with the required passes. These denials occurred despite apparent ongoing legal proceedings that would reasonably require such access. Murphy does not, however, provide additional evidence or broader context to indicate the duration or frequency of such denials beyond this three-day period. While the incidents described in the letter indicate a clear hindrance to his legal access on those specific days, they do not establish a continuous or systemic—and therefore extraordinary—denial of access throughout the critical period relevant to his AEDPA deadline.

Furthermore, the letter does not detail any follow-up actions taken by Murphy or the prison administration regarding his complaints. It lacks information on whether these issues were resolved or continued beyond the three-day window. This gap in the narrative makes it difficult for the Court to assess the overall impact of the alleged denials on Murphy's ability to meet the statutory deadline. Given the limited scope and duration of the described events, the Court might consider these incidents as isolated rather than indicative of an extraordinary circumstance warranting a significant extension of the AEDPA statute of limitations. At most, these events might justify an equitable tolling of a few days, reflecting the specific period Murphy was denied library access. Consequently, even if the Court were to

grant equitable tolling for this brief period, it would likely only extend the filing deadline by a maximum of three days, or until March 15, 2010.[5]

In sum, even with equitable tolling, Murphy's § 2254 is still untimely by over a decade. As such, the Court need not reach the questions of whether Claims 2 and 3 are procedurally defaulted, nor the merits of Murphy's claims.

## IV.    CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 Fed. App'x 771, 774 (6th Cir. 2005).

In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

---

[5] Strictly counting days, Murphy's new deadline would be March 13, 2010—which falls on a Saturday. The deadline would, therefore, fall on the following Monday, March 15, 2020. Fed. R. Civ. P. 6(a)(2)(C).

27

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Reasonable jurists would not debate the denial of Murphy's § 2254 petition as untimely. Murphy failed to comply with the statute of limitations and, as discussed above, is not entitled to statutory or equitable tolling that would render his petition timely. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court recommends the District Court find that Murphy is not entitled to a certificate of appealability.

## V.   RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that Murphy's § 2254 petition [DE 1] be **DENIED**, and that this matter be **DISMISSED WITH PREJUDICE**, and that no certificate of appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

28

Entered this 15th of May, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY